**Arthur C. PAYNE, Plaintiff-Appellant, Cross-Appellee,**

v.

**PANAMA CANAL COMPANY, Defendant-Appellee, Cross-Appellant.**

No. 78–2197.

United States Court of Appeals, Fifth Circuit.

Nov. 26, 1979.

Henry L. Newell, Daniel D. Douglass, Balboa, Canal Zone, for plaintiff-appellant cross-appellee.

McKabney, Lindley & McQuary, Jess K. Totten, Dwight A. McKabney, Balboa Heights, Canal Zone, for defendant-appellee cross-appellant.

Before THORNBERRY, CHARLES CLARK and KRAVITCH, Circuit Judges.

CHARLES CLARK, Circuit Judge:

On May 9, 1964, the Panama Canal Company [PCC] discharged Arthur C. Payne from his position of Administrative Services Assistant. Payne appealed without success within the PCC and to the Civil Service Commission. In November 1965, Payne brought suits in the United States District Court for the District of Columbia seeking reinstatement and in the United States

Court of Claims seeking back pay. This latter action was transferred to the United States District Court for the District of Columbia. On April 11, 1968, the district court dismissed Payne's suit for reinstatement for want of prosecution. On April 15, 1970, the district court dismissed his claim for back pay. The district court subsequently set aside both orders of dismissal. In the action seeking reinstatement, the district court dismissed one of three grounds offered in support of the discharge and remanded the case to the Civil Service Commission for reconsideration. On June 21, 1972, the Commission found the discharge unsustainable and imposed a ninety-day suspension, ordering the PCC to "retroactively restore Mr. Payne to the position from which he was removed or one of like seniority, status, and pay." On July 5, 1972, the district court dismissed the suits for reinstatement and back pay without prejudice on the ground of mootness. In May 1974, Payne submitted a back pay claim to the PCC in the amount of $187,665.00. PCC refused to acknowledge liability for any portion greater than $12,248.88. This dispute centered on whether general principles of equity together with various statutory provisions gave Payne a right to recover the following elements of his claim: (1) attorney's fees; (2) accumulated annual leave; (3) state and local taxes paid on interim earnings; (4) housing allowance; (5) costs of storage of household goods; (6) inflation factor; and (7) prejudgment interest.[1]

Being unable to compromise, Payne brought this action for a declaratory judgment. In a bifurcated judgment, the United States District Court for the District of

the Canal Zone gave Payne credit for state and local taxes paid on interim earnings, ordered an inflation factor be used when calculating the back pay award, and found a grant of prejudgment interest proper. The court denied the remaining elements of the claim. Both parties appeal. We affirm in part and reverse in part.

The PCC argues that the dismissal of Payne's prior suits for reinstatement and back pay bars the present action for declaratory relief on grounds of res judicata. However, the United States District Court for the District of Columbia dismissed the prior actions on grounds of mootness and entered the dismissals without prejudice. To operate as a bar by res judicata, the prior action must have concluded in a final judgment rendered on the merits. *Lawlor v. National Screen Service Corp.*, 349 U.S. 322, 326, 75 S.Ct. 865, 99 L.Ed. 1122 (1955); *Cromwell v. County of Sac*, 94 U.S. 351, 352, 24 L.Ed. 195 (1876). The dismissal without prejudice of the prior actions on grounds of mootness does not serve as a final adjudication on the merits so as to bar this action. F.R.Civ.P. 41(b). *See United States v. Seckinger*, 408 F.2d 146, 148–49 (5th Cir. 1969), *reversed on other grounds*, 397 U.S. 203, 90 S.Ct. 880, 25 L.Ed.2d 224 (1970). *See also De Volld v. Bailar*, 568 F.2d 1162, 1165–66 (5th Cir. 1978).

The parties agree that the provisions of the Back Pay Act, 5 U.S.C. § 5596, and the statutory provisions relating to personnel actions taken against preference eligible employees, 5 U.S.C. §§ 7512, 7701, apply to this claim. These provisions, first enacted in 1966, were amended by Congress in 1975 and 1978.[2] The applicability of these

---

1. The parties initially also disputed whether the costs of certain telephone calls and payments made to reimburse Payne for travel expenses incurred in interim employment were recoverable in a claim for back pay. These items are no longer in contention and are not presented for review on this appeal.

2. The Back Pay Act of 1966, 80 Stat. 94, amended 5 U.S.C. § 652 and made provisions for awards of back pay to employees of an agency found to have suffered an unjustified or unwarranted personnel action. Congress transferred the provisions of § 652 to 5 U.S.C.

§ 5596 in the Act of Sept. 11, 1967, Pub.L. No. 90–83, § 1(34)(c), 81 Stat. 201. Section 5596 prior to amendment in 1975 provided:

**§ 5596. Back pay due to unjustified personnel action**

(a) For the purpose of this section, "agency" means—

(1) an Executive agency;

(2) the Administrative Office of the United States Courts;

(3) the Library of Congress;

(4) the Government Printing Office; and

amendments to the present claim is disputed.

▪ In 1975, Congress amended the provisions of § 5596 regarding credit for

(5) the government of the District of Columbia.

(b) An employee of an agency who, on the basis of an administrative determination or a timely appeal, is found by appropriate authority under applicable law or regulation to have undergone an unjustified or unwarranted personnel action that has resulted in the withdrawal or reduction of all or a part of the pay, allowances, or differentials of the employee—

(1) is entitled, on correction of the personnel action, to receive for the period for which the personnel action was in effect an amount equal to all or any part of the pay, allowances, or differentials, as applicable, that the employee normally would have earned during that period if the personnel action had not occurred, less any amounts earned by him through other employment during that period; and

(2) for all purposes, is deemed to have performed service for the agency during that period, except that the employee may not be credited, under this section, leave in an amount that would cause the amount of leave to his credit to exceed the maximum amount of the leave authorized for the employee by law or regulation.

(c) The Civil Service Commission shall prescribe regulations to carry out this section. However, the regulations are not applicable to the Tennessee Valley Authority and its employees.

Congress amended 5 U.S.C. § 863 relating to preference eligible employees in the Act of Sept. 6, 1966, Pub.L. No. 89–554, 80 Stat. 528, and transferred those provisions to 5 U.S.C. §§ 7512, 7701. Section 7512 prior to amendment in 1978 provided:

§ **7512. Cause; procedure; exception**

(a) An agency may take adverse action against a preference eligible employee, or debar him for future appointment, only for such cause as will promote the efficiency of the service.

(b) A preference eligible employee against whom adverse action is proposed is entitled to—

(1) at least 30 days' advance written notice, except when there is reasonable cause to believe him guilty of a crime for which a sentence of imprisonment can be imposed, stating any and all reasons, specifically and in detail, for the proposed action;

(2) a reasonable time for answering the notice personally and in writing and for furnishing affidavits in support of the answer; and

(3) a notice of an adverse decision.

(c) This section does not apply to the suspension or removal of a preference eligible employee under section 7532 of this title.

accumulated annual leave.[3] Under this amendment, annual leave restored to an employee that is in excess of the maximum leave accumulation permitted by law is

Section 7701 prior to amendment in 1978 provided:

§ **7701. Appeals of preference eligibles**

A preference eligible employee as defined by section 7511 of this title is entitled to appeal to the Civil Service Commission from an adverse decision under section 7512 of this title of an administrative authority so acting. The employee shall submit the appeal in writing within a reasonable time after receipt of notice of the adverse decision, and is entitled to appear personally or through a representative under regulations prescribed by the Commission. The Commission, after investigation and consideration of the evidence submitted, shall submit its findings and recommendations to the administrative authority and shall send copies of the findings and recommendations to the appellant or his representative. The administrative authority shall take the corrective action that the Commission finally recommends.

3. The Act of Dec. 23, 1975, Pub.L. No. 94–172, § 1(a), 89 Stat. 1025, amended § 5596 to provide:

§ **5596. Back pay due to unjustified personnel action**

(a) For the purpose of this section, "agency" means—

(1) an Executive agency;

(2) the Administrative Office of the United States Courts;

(3) the Library of Congress;

(4) the Government Printing Office; and

(5) the government of the District of Columbia.

(b) An employee of an agency who, on the basis of an administrative determination or a timely appeal, is found by appropriate authority under applicable law or regulation to have undergone an unjustified or unwarranted personnel action that has resulted in the withdrawal or reduction of all or a part of the pay, allowances, or differentials of the employee—

(1) is entitled, on correction of the personnel action, to receive for the period for which the personnel action was in effect an amount equal to all or any part of the pay, allowances, or differentials, as applicable, that the employee normally would have earned during that period if the personnel action had not occurred, less any amounts earned by him through other employment during that period; and

(2) for all purposes, is deemed to have performed service for the agency during that period except that—

(A) annual leave restored under this paragraph which is in excess of the maximum

credited to a separate leave account. Upon separation from agency service, an employee is entitled to receive a lump-sum payment for any leave credited to such an account that is unused and still available. 5 U.S.C. § 5551(a). *See* 5 C.F.R. § 550.804(f). Congress expressly made clear its intent for the 1975 amendment to "apply to any employee found, on or after March 30, 1966, to have undergone an unjustified or unwarranted personnel action the correction of

> leave accumulation permitted by law shall be credited to a separate leave account for the employee and shall be available for use by the employee within the time limits prescribed by regulations of the Civil Service Commission, and
> (B) annual leave credited under subparagraph (A) of this paragraph but unused and still available to the employee under regulations prescribed by the Commission shall be included in the lump-sum payment under section 5551 or 5552(1) of this title but may not be retained to the credit of the employee under section 5552(2) of this title.
> (c) The Civil Service Commission shall prescribe regulations to carry out this section. However, the regulations are not applicable to the Tennessee Valley Authority and its employees.

4. Under the Civil Service Reform Act of 1978, 92 Stat. 1138, §§ 5596, 7512, 7513, and 7701 currently provide:

> **§ 5596. Back pay due to unjustified personnel action**
> (a) For the purpose of this section, "agency" means—
> (1) an Executive agency;
> (2) the Administrative Office of the United States Courts;
> (3) the Library of Congress;
> (4) the Government Printing Office; and
> (5) the government of the District of Columbia.
> (b)(1) An employee of an agency who, on the basis of a timely appeal or an administrative determination (including a decision relating to an unfair labor practice or a grievance) is found by appropriate authority under applicable law, rule, regulation, or collective bargaining agreement, to have been affected by an unjustified or unwarranted personnel action which has resulted in the withdrawal or reduction of all or part of the pay, allowances, or differentials of the employee—
> (A) is entitled, on correction of the personnel action, to receive for the period for which the personnel action was in effect—

which entitled or entitles such employee to the benefits provided under section 5596 of Title 5, United States Code." Act of Dec. 23, 1975, Pub.L. No. 94–172, § 1(b), 89 Stat. 1025. Since Payne was adjudged on June 21, 1972, to be the victim of an unjustified or unwarranted personnel action, the 1975 amendment clearly applies to his claim.

Congress amended §§ 5596, 7512 and 7701, and added § 7513 in 1978.[4] The amend-

> (i) an amount equal to all or any part of the pay, allowances, or differentials, as applicable which the employee normally would have earned or received during the period if the personnel action had not occurred, less any amounts earned by the employee through other employment during that period; and
> (ii) reasonable attorney fees related to the personnel action which, with respect to any decision relating to an unfair labor practice or a grievance processed under a procedure negotiated in accordance with chapter 71 of this title, shall be awarded in accordance with standards established under section 7701(g) of this title; and
> (B) for all purposes, is deemed to have performed service for the agency during that period, except that—
> (i) annual leave restored under this paragraph which is in excess of the maximum leave accumulation permitted by law shall be credited to a separate leave account for the employee and shall be available for use by the employee within the time limits prescribed by regulations of the Office of Personnel Management, and
> (ii) annual leave credited under clause (i) of this subparagraph but unused and still available to the employee under regulations prescribed by the Office shall be included in the lump-sum payment under section 5551 or 5552(1) of this title but may not be retained to the credit of the employee under section 5552(2) of this title.
> (2) This subsection does not apply to any reclassification action nor authorize the setting aside of an otherwise proper promotion by a selecting official from a group of properly ranked and certified candidates.
> (3) For the purpose of this subsection, "grievance" and "collective bargaining agreement" have the meanings set forth in section 7103 of this title, "unfair labor practice" means an unfair labor practice described in section 7116 of this title, and "personnel action" includes the omission or failure to take an action or confer a benefit.
> (c) The Civil Service Commission shall prescribe regulations to carry out this section.

ments were passed on October 13, 1978, and took effect ninety days thereafter. Civil Service Reform Act of 1978, § 907, 92 Stat. at 1227. Congress was silent as to whether

However, the regulations are not applicable to the Tennessee Valley Authority and its employees.

### § 7512.  Actions covered

This subchapter applies to—

(1) a removal;

(2) a suspension for more than 14 days;

(3) a reduction in grade;

(4) a reduction in pay;  and

(5) a furlough of 30 days or less,

but does not apply to—

(A) a suspension or removal under section 7532 of this title,

(B) a reduction-in-force action under section 3502 of this title,

(C) the reduction in grade of a supervisor or manager who has not completed the probationary period under section 3321(a)(2) of this title if such reduction is to the grade held immediately before becoming such a supervisor or manager,

(D) a reduction in grade or removal under section 4303 of this title, or

(E) an action initiated under section 1206 or 7521 of this title.

### § 7513.  Cause and procedure

(a) Under regulations prescribed by the Office of Personnel Management, an agency may take an action covered by this subchapter against an employee only for such cause as will promote the efficiency of the service.

(b) An employee against whom an action is proposed is entitled to—

(1) at least 30 days advance written notice, unless there is reasonable cause to believe the employee has committed a crime for which a sentence of imprisonment may be imposed, stating the specific reasons for the proposed action;

(2) a reasonable time, but not less than 7 days, to answer orally and in writing and to furnish affidavits and other documentary evidence in support of the answer;

(3) be represented by an attorney or other representative;  and

(4) a written decision and the specific reasons therefor at the earliest practicable date.

(c) An agency may provide, by regulation, for a hearing which may be in lieu of or in addition to the opportunity to answer provided under subsection (b)(2) of this section.

(d) An employee against whom an action is taken under this section is entitled to appeal to the Merit Systems Protection Board under section 7701 of this title.

(e) Copies of the notice of proposed action, the answer of the employee when written, a summary thereof when made orally, the notice of decision and reasons therefor, and any order effecting an action covered by this subchapter, together with any supporting material, shall be maintained by the agency and shall be furnished to the Board upon its request and to the employee affected upon the employee's request.

### § 7701.  Appellate procedures

(a) An employee, or applicant for employment, may submit an appeal to the Merit Systems Protection Board from any action which is appealable to the Board under any law, rule, or regulation.  An appellant shall have the right—

(1) to a hearing for which a transcript will be kept;  and

(2) to be represented by an attorney or other representative.

Appeals shall be processed in accordance with regulations prescribed by the Board.

(b) The Board may hear any case appealed to it or may refer the case to an administrative law judge appointed under section 3105 of this title or other employee of the Board designated by the Board to hear such cases, except that in any case involving a removal from the service, the case shall be heard by the Board, an employee experienced in hearing appeals, or an administrative law judge. The Board, administrative law judge, or other employee (as the case may be) shall make a decision after receipt of the written representations of the parties to the appeal and after opportunity for a hearing under subsection (a)(1) of this section.  A copy of the decision shall be furnished to each party to the appeal and to the Office of Personnel Management.

(c)(1) Subject to paragraph (2) of the subsection, the decision of the agency shall be sustained under subsection (b) only if the agency's decision—

(A) in the case of an action based on unacceptable performance described in section 4303 of this title, is supported by substantial evidence, or

(B) in any other case, is supported by a preponderance of the evidence.

(2) Notwithstanding paragraph (1), the agency's decision may not be sustained under subsection (b) of this section if the employee or applicant for employment—

(A) shows harmful error in the application of the agency's procedures in arriving at such decision;

(B) shows that the decision was based on any prohibited personnel practice described in section 2302(b) of this title; or

(C) shows that the decision was not in accordance with law.

(d)(1) In any case in which—

(A) the interpretation or application of any civil service law, rule, or regulation, under the jurisdiction of the Office of Personnel Management is at issue in any proceeding under this section;  and

these amendments would apply to pending claims of employees found, prior to the effective date of the amendment, to have suffered an unjustified or unwarranted personnel action.

(B) the Director of the Office of Personnel Management is of the opinion that an erroneous decision would have a substantial impact on any civil service law, rule, or regulation under the jurisdiction of the Office;

the Director may as a matter of right intervene or otherwise participate in that proceeding before the Board. If the Director exercises his right to participate in a proceeding before the Board, he shall do so as early in the proceeding as practicable. Nothing in this title shall be construed to permit the Office to interfere with the independent decisionmaking of the Merit Systems Protection Board.

(2) The Board shall promptly notify the Director whenever the interpretation of any civil service law, rule, or regulation under the jurisdiction of the Office is at issue in any proceeding under this section.

(e)(1) Except as provided in section 7702 of this title, any decision under subsection (b) of this section shall be final unless—

(A) a party to the appeal or the Director petitions the Board for review within 30 days after the receipt of the decision; or

(B) The Board reopens and reconsiders a case on its own motion.

The Board, for good cause shown, may extend the 30-day period referred to in subparagraph (A) of this paragraph. One member of the Board may grant a petition or otherwise direct that a decision be reviewed by the full Board. The preceding sentence shall not apply if, by law, a decision of an administration law judge is required to be acted upon by the Board.

(2) The Director may petition the Board for a review under paragraph (1) of this subsection only if the Director is of the opinion that the decision is erroneous and will have a substantial impact on any civil service law, rule, or regulation under the jurisdiction of the Office.

(f) The Board, or an administrative law judge or other employee of the Board designated to hear a case, may—

(1) consolidate appeals filed by two or more appellants, or

(2) join two or more appeals filed by the same appellant and hear and decide them concurrently,

if the deciding official or officials hearing the cases are of the opinion that the action could result in the appeals' being processed more expeditiously and would not adversely affect any party.

(g)(1) Except as provided in paragraph (2) of this subsection, the Board, or an administrative law judge or other employee of the Board designated to hear a case, may require payment by the agency involved of reasonable attorney fees incurred by an employee or applicant for employment if the employee or applicant is the prevailing party and the Board, administrative law judge, or other employee, as the case may be, determines that payment by the agency is warranted in the interest of justice, including any case in which a prohibited personnel practice was engaged in by the agency or any case in which the agency's action was clearly without merit.

(2) If an employee or applicant for employment is the prevailing party and the decision is based on a finding of discrimination prohibited under section 2302(b)(1) of this title, the payment of attorney fees shall be in accordance with the standards prescribed under section 706(k) of the Civil Rights Act of 1964 (42 U.S.C. 2000e–5(k)).

(h) The Board may, by regulation, provide for one or more alternative methods for settling matters subject to the appellate jurisdiction of the Board which shall be applicable at the election of an applicant for employment or of an employee who is not in a unit for which a labor organization is accorded exclusive recognition, and shall be in lieu of other procedures provided for under this section. A decision under such a method shall be final, unless the Board reopens and reconsiders a case at the request of the Office of Personnel Management under subsection (d) of this section.

(i)(1) Upon the submission of any appeal to the Board under this section, the Board, through reference to such categories of cases, or other means, as it determines appropriate, shall establish and announce publicly the date by which it intends to complete action on the matter. Such date shall assure expeditious consideration of the appeal, consistent with the interests of fairness and other priorities of the Board. If the Board fails to complete action on the appeal by the announced date, and the expected delay will exceed 30 days, the Board shall publicly announce the new date by which it intends to complete action on the appeal.

(2) Not later than March 1 of each year, the Board shall submit to the Congress a report describing the number of appeals submitted to it during the preceding calendar year, the number of appeals on which it completed action during that year, and the number of instances during that year in which it failed to conclude a proceeding by the date originally announced, together with an explanation of the reasons therefor.

■■ In the absence of a statutory direction or legislative history to the contrary, an appellate court must apply the law in effect at the time it renders its decision, thus giving effect to the intervening law even though such enactments do not explicitly recite that they are to be applied to pending cases. *Bradley v. School Board of City of Richmond,* 416 U.S. 696, 711–16, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974); *Thorpe v. Housing Authority of City of Durham,* 393 U.S. 268, 281–83, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969). Payne's claim for back pay should be considered in light of the 1978 amendments to the applicable statutes.

■ In addition to the statutory basis for the claim of back pay, Payne seeks a declaration of relief based upon general principles of equity. He contends that Congress, by establishing the PCC as a corporate entity capable of suing and being sued in its corporate name, *see* C.Z.Code, tit. 2, § 65, waived the sovereign immunity of the United States and subjected the PCC to suit in any court of competent jurisdiction, including courts of equity. Payne is correct in contending Congress waives sovereign immunity when it authorizes a government agency to sue and be sued in its own name. *Reconstruction Finance Corp. v. J. G. Menihan Corp.,* 312 U.S. 81, 84–85, 61 S.Ct. 485, 85 L.Ed. 595 (1941); *Federal Housing Administration v. Burr,* 309 U.S. 242, 245, 60 S.Ct. 488, 84 L.Ed. 724 (1940). However, Congress may limit such a waiver by imposing conditions and restrictions it deems necessary. *Crown Coat Front Co. v. United States,* 386 U.S. 503, 520, 87 S.Ct. 1177, 18 L.Ed.2d 256 (1967); *Honda v. Clark,* 386 U.S. 484, 501, 87 S.Ct. 1188, 18 L.Ed.2d 244 (1967); *Hart v. United States,* 585 F.2d 1280 (5th Cir. 1978), *cert. denied,* —— U.S. ——, 99 S.Ct. 2882, 61 L.Ed.2d 310 (1979); *Ducharme v. Merrill-National Laboratories,* 574 F.2d 1307, 1311 (5th Cir. 1978), *cert. denied,* 439 U.S. 1002, 99 S.Ct. 612, 58

L.Ed.2d 677 (1979). *See also Tsakos Shipping and Trading S. A. v. M/T "Taboga,"* 597 F.2d 66 (5th Cir. 1979). In the instant case, while Congress waived sovereign immunity by establishing the PCC as a sue and be sued corporation, it conditioned its waiver by requiring that claims for back pay arising from an unjustified personnel action be brought in a specific manner. Rather than being considered under general principles of equity, Payne's claim for back pay must be assayed by the provisions of the Back Pay Act of 1966, as amended. *See* 5 U.S.C. §§ 105, 5595–96. In addition, because Payne is a veteran and thus a preference eligible employee within the meaning of 5 U.S.C. § 2108, his claim also must be considered under the provisions of 5 U.S.C. §§ 7511–13, 7701.

### I. ATTORNEY'S FEES

■ Payne claims reasonable attorney's fees relating to the personnel action as an element of his back pay award. We affirm the district court's denial of this item. The American rule is that a prevailing party ordinarily is not entitled to recover attorney's fees unless a statute or contract so provides. *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 247–68, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975); *Fleischmann Distilling Corp. v. Maier Brewing Co.,* 386 U.S. 714, 717–18, 87 S.Ct. 1404, 18 L.Ed.2d 475 (1967).

As amended in 1978, both the Back Pay Act and the statutory provisions relating to preference eligible employees authorize the award of attorney's fees in certain instances. However, Payne's claim does not fall within those specified. Section 5596 authorizes attorney's fees where the personnel action relates either "to an unfair labor practice or [to] a grievance processed under a procedure negotiated in accordance with Chapter 71" of title 5. The record does not

---

(3) The Board shall by rule indicate any other category of significant Board action which the Board determines should be subject to the provisions of this subsection.

(4) It shall be the duty of the Board, an administrative law judge, or employee designated by the Board to hear any proceeding under this section to expedite to the extent practicable that proceeding.

(j) The Board may prescribe regulations to carry out the purpose of this section.

disclose that the PCC's discharge of Payne in 1964 constituted an unfair labor practice as defined in 5 U.S.C. § 7116(a). Furthermore, it is clear that Payne's grievance was not processed under a procedure negotiated in accordance with chapter 71. Those provisions, enacted as part of the Civil Service Reform Act of 1978, were not in existence at the time Payne pursued agency review. The attorney's fee provisions of § 5596 are inapplicable to Payne's claim.

██ Similarly, Payne cannot recover attorney's fees pursuant to the statutes governing preference eligible employees. Attorney's fees are recoverable pursuant to §§ 7513, 7701(g) only where appeal is taken to the Merits Service Protection Board. This Board was not in existence at the time Payne appealed to the Civil Service Commission from the adverse agency decision. Congress created the Board, together with the Office of Personnel Management, when enacting the Civil Service Reform Act of 1978. Because Payne's appeal never was presented to this Board, he cannot benefit from the attorney's fees provisions of § 7701(g).

## II. ACCUMULATED LEAVE

Payne and the PCC agree that a back pay award in this case should contain credit for annual leave that would have been available to Payne but for his wrongful discharge. The parties are unable to agree on the calculation of such credit.

██ The PCC contends that § 5596, as amended in 1975, is without meaning in the instant case. Employees of the PCC expressly are exempt from the federal statutory and regulatory provisions regarding annual leave. 5 U.S.C. § 6301(2)(B)(iv). *See* 5 U.S.C. §§ 6303–04; 5 C.F.R. §§ 630.-302–.308. Annual leave accruing to employees of the PCC is governed by agency regulations contained in the Panama Canal Personnel Manual. [PCPM] These regulations provide that annual leave accrues at a rate of 284 hours per year and may not be carried over from one year to the next in excess of 760 hours. *See* PCPM §§ 630.2–1a and –1c. The PCC contends that by

removing the words "or regulation" from § 5596(b), Congress in 1975 left the statute without meaning when applied to employees of agencies whose leave policies are set by internal regulation rather than congressional statute. We disagree.

██ Every statute must be viewed in its entirety so that each part has a sensible and intelligent effect harmonious with the whole. It is not to be presumed that Congress intended any part of a statute to be without reasonable meaning. *General Motors Acceptance Corp. v. Whisnant,* 387 F.2d 774, 778 (5th Cir. 1968). Any ambiguity resulting from the decision of Congress to delete the words "or regulation" is resolved by reference to the Legislative History of the 1975 amendment. Congress parenthetically recognized that the maximum annual leave authorized by law or regulation could vary. S.Rep. No. 94–536, 94th Cong., 1st Sess. 3, *reprinted in* [1975] 2 U.S.Code Cong. & Admin.News, pp. 2105, 2107. In characterizing the effect of the 1975 amendment, Congress focused on the individual employee when it stated:

> . . . any annual leave which is in excess of the employee's annual leave ceiling shall be credited to a separate leave account.

*Id.* The legal method by which such a leave ceiling is fixed is without import. We therefore construe the words "maximum leave accumulation permitted by law" in the present enactment to include maximum leave accumulations permitted by statute or regulation.

## III. STATE & LOCAL TAXES

██ The PCC seeks to reduce the amount of back pay owed to Payne by an amount equal to the state and local taxes paid by Payne on his interim earnings. Payne resists this position, arguing that, because there are no state or local taxes in the Canal Zone, the correct amount to be considered as "earned or received" through his other employment does not include the amount of state and local taxes paid on interim earnings.

This is a case of first impression. The statutory language of § 5596 and its implementing regulation, 5 C.F.R. § 550.804(e), fail to provide guidance. The legislative history of the statute is equally silent.

The district court accepted Payne's position and denied the PCC credit for the state and local taxes paid by Payne on his interim wages. We agree with the district court's determination of the issue. To decide otherwise would deny Payne a real and practical benefit of employment in the Canal Zone that he would have enjoyed had it not been for the unjustified or unwarranted personnel action. *See generally, Urbina v. United States,* 428 F.2d 1280, 1285, 192 Ct.Cl. 875 (1970).

### IV. HOUSING ALLOWANCE

■ Payne claims compensation for the difference in the cost of rental housing paid in the United States during the period of removal and that he would have paid in the Canal Zone. The district court denied such compensation.

Under § 5596, Payne is entitled to compensation for the allowances or differentials he would have earned or received as an employee with the PCC. One such allowance expressly provided for by statute is rental of quarters to the employees of an executive agency. *See* 5 U.S.C. § 5911. Thus, Payne is entitled to compensation for the difference in the cost of rental housing occasioned by the unjustified or unwarranted personnel action. However, this entitlement is limited to the cost of rental housing in the United States of comparable kind to that furnished to Payne in the Canal Zone.

### V. STORAGE COSTS

Payne seeks reimbursement for costs associated with the storage of his household goods in the United States from the date of reinstatement until their shipment to the Canal Zone. Payne contends that he is entitled to recover such storage costs because of the PCC's initial refusal to transship the furnishings to the Canal Zone.

The district court found that Payne was entitled to have his household effects shipped to the Canal Zone at the PCC's expense,[5] but that he was not entitled to recover the costs of storage.

■ The district court correctly determined the issue of storage costs. An employee is under an affirmative duty to mitigate his damages in cases brought under § 5596. *White v. Bloomberg,* 501 F.2d 1379, 1382–85 (4th Cir. 1974). Payne failed in his duty to mitigate. This duty required him to ship his goods to the Canal Zone at his own expense and reclaim the costs of shipment. Had he done so, no storage costs would have been incurred.

### VI. INFLATION FACTOR

Payne contends that his claim for back pay should be calculated by reference to an inflation factor. He argues that an award of back pay not based on constant dollars would fail to meet the mandate of § 5596 to award "an amount equal" to the pay, allowances, and differentials he would have received less any amounts earned through other employment. The district court accepted Payne's position, noting that "it cannot be said that a 1964 dollar is equal to a 1972 dollar."

■ Neither the language of § 5596 nor the pertinent regulation expressly authorizes the application of an inflation factor in the calculation of awards of back pay. *See* 5 C.F.R. § 630.804(e). Absent such an express statutory or regulatory provision, we find the application of an inflation factor to be inappropriate. The law does not recognize the impact on judgments of inflation occurring prior to the judgment. *H. K. Porter Co., Inc. v. Goodyear Tire and Rubber Co.,* 536 F.2d 1115, 1124 (6th Cir. 1976).

### VII. PREJUDGMENT INTEREST

■ Payne claims an entitlement to interest on the award of back pay from the date of his reinstatement by the Civil Service Commission. The PCC argues that interest is not recoverable, relying in part

---

**5.** These shipping costs are not at issue on this appeal.

upon the statutory prohibition on interest at 28 U.S.C. § 2516(a).[6] This statute is without application to Payne's claim because it applies only to claims against the United States pursued in the Court of Claims. A claim for back pay made by an employee of the PCC under the Back Pay Act is not such a claim. *Abbott v. United States*, 112 F.Supp. 801, 803–04, 125 Ct.Cl. 330 (1953).

Payne relies on *White v. Bloomberg*, 501 F.2d 1379 (4th Cir. 1974), which allowed interest on an award of back pay made under § 5596. There, the district court's prior order of reinstatement and back pay previously had been construed as "a final money judgment that only lacked 'simple mathematical calculations.'" 501 F.2d at 1382. As such, it arguably supported an award of postjudgment interest pursuant to 28 U.S.C. § 1961. No such final money judgment from a district court exists here.

The district court, relying in part upon the law of the Canal Zone, awarded prejudgment interest at a rate of six percent per annum running from the date of Payne's reinstatement by the Civil Service Commission.

▪ Compensation awards under the Back Pay Act or the provisions relating to preference eligible employees are imposed under an act of Congress. Therefore, they bear interest only if and to the extent such interest is required by federal law. *See Rodgers v. United States*, 332 U.S. 371, 373, 68 S.Ct. 5, 7, 92 L.Ed. 3 (1953). There is no language in the Back Pay Act or in the statutory provisions relating to preference eligible employees discussing an award of interest. The relevant regulations similarly are silent. However, as the Supreme Court noted in *Rodgers*:

[T]he failure to mention interest in statutes which create obligations has not been interpreted by this Court as manifesting an unequivocal congressional pur-

pose that the obligation shall not bear interest.

*Id.*

▪ In the absence of a statutory provision, the award of prejudgment interest is in the discretion of the court. *Oil, Chemical & Atomic Workers Int'l Union v. American Cyanamid Co.,* 546 F.2d 1144 (5th Cir. 1977) (LMRA claim); *Solomon v. Warren,* 540 F.2d 777 (5th Cir. 1976), *cert. dismissed,* 434 U.S. 801, 98 S.Ct. 28, 54 L.Ed.2d 59 (1977) (DOHSA claim); *Weeks v. Alonzo Cothron, Inc.,* 493 F.2d 538 (5th Cir. 1974) (LHWCA claim); *Wolf v. Frank,* 477 F.2d 467 (5th Cir.), *cert. denied,* 414 U.S. 975, 94 S.Ct. 287, 38 L.Ed.2d 218 (1973) (securities claim under Rule 10b–5); *Dennis v. Central Gulf Steamship Corp.,* 453 F.2d 137 (5th Cir.), *cert. denied,* 409 U.S. 948, 93 S.Ct. 286, 34 L.Ed.2d 218 (1972) (admiralty claim). This court previously has observed that a major factor permeating cases in which prejudgment interest has been allowed is the necessity to compensate an injured plaintiff. *See West v. Harris,* 573 F.2d 873, 883 (5th Cir. 1978), *cert. denied,* 440 U.S. 946, 99 S.Ct. 1424, 59 L.Ed.2d 635 (1979). Here, the congressional intent is clear. The Back Pay Act remedy compensates employees who were subject to unjustified and unwarranted personnel actions. In light of the remedial and compensatory purpose, we cannot say that the district court's award of prejudgment interest constitutes an abuse of discretion. Our analysis expressly pretermits any determination of the correctness of the district court's decision to apply state law to the claim under review.

The judgment of the district court is affirmed in part and reversed in part, and this case is remanded to the district court for entry of a judgment consistent with this opinion.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

---

**6.** § 2516(a) provides that:

(a) Interest on a claim against the United States shall be allowed in a judgment of the

Court of Claims only under a contract or Act of Congress expressly providing for payment thereof.