[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
A dissolution of marriage of the parties was entered in this matter on January 28, 1991. The orders included Plaintiff Husband to pay to the Defendant Wife child support in the amount of $100.00 per week for the one minor child (Carlton Fox, Jr. born February 18, 1985). The judgment also included an order requiring the Plaintiff to pay periodic alimony to the Defendant in the amount of $25 per week, payable until the Defendant's death, remarriage or until the minor child turns 18.
On July 15, 1999, the child support order was increased to $175 per week as a result of a "review and adjustment" Motion to Modify brought by the State of Connecticut Support Enforcement Division on behalf of the Defendant. The $25 per week alimony order was not modified. The file reflects that the Court (Matasavage, F.S.M.) included a portion of the Plaintiff's overtime income in arriving at the modified child support figure.
Subsequently, the plaintiff filed a Motion for Modification dated March 25, 2002 (and served March 26, 2002), seeking a reduction of the child support and alimony orders. He indicates on his written motion that the circumstances have changed substantially for two reasons: (1) He is earning less because of a reduction in overtime hours; and (2) the minor child is incarcerated on a criminal matter.
The Plaintiff requested orally that the orders be completely suspended (or significantly reduced) because of his son's present incarceration. The Plaintiff submits that the incarceration eliminates most or all of the Defendant's expenses in raising this child.
The Defendant Mother objects to any reduction or suspension of the orders. She acknowledges that their son is incarcerated on a criminal matter in Connecticut, and that she anticipates that he will be released in approximately nine months (from this April 19, 2002 hearing), i.e., about one month prior to his emancipation upon his 18 birthday. Apparently, however, an exact release date has yet to be determined. CT Page 6091
The Defendant mother testified that she still provides directly for the minor by making clothing purchases and giving him spending money for the prison commissary. She also states that she could not afford her current housing without the child support and alimony income.
Based upon the Plaintiff's current income ($983 gross per week as listed on his Financial Affidavit) the Guideline Worksheet calculations demonstrate that there is a resulting deviation of less than 15% of his current child support order. Accordingly, his Motion to Modify is denied as to his earnings reduction claim in accordance with Connecticut General Statutes § 46b-86 (a).
Therefore, the issue presented is whether this Court has the authority to reduce or suspend in full an order for child support and/or alimony during the period of the child's incarceration.
 DISCUSSION
"Although child support orders rendered pursuant to General Statues § 46b-56 are made and enforced as incidents to divorce decrees . . . the minor children's right to parental support has an independent character, separate and apart from the terms of the support obligations as set out in the judgment of dissolution." (Citations omitted; internal quotation marks omitted.) Guille v. Guille, 196 Conn. 260, 263,429 A.2d 175 (1985). "In the typical case the parental obligation to support a child will continue until the child reaches the age of 18. However, there are other methods by which the support obligation may be terminated. A parent's support obligation will also end if the child in question dies or becomes emancipated prior to reaching the age of 18." A. Rutkin, E. Effron K. Hogan, 8 Connecticut Practice Book Series: Family Law and Practice (1991) § 38.21, p. 1065. "The support obligation may end at any of the following events: (1) Upon the child reaching majority; (2) Upon the child graduating from secondary education; (3) Upon the child entering the Armed Services; (4) Upon the child's marriage; (5) Upon the child's graduation from post-secondary education, or even graduate school; or (6) At any other event by which the Court determines that a child is or is expected to be self-supporting." 3 Family Law and Practice (A. Rutkin ed., 1995) § 33.10 [2], p. 33-86. See, e.g., Goold v. Goold, 11 Conn. App. 268,270-71, 527 A.2d 696, cert. denied, 204 Conn. 810, 528 A.2d 1156 (1987) (child support was ordered to be paid "until said child dies, marries, becomes wholly self-supporting, or attains the age of 21 years. . . ." (Internal quotation marks omitted.)). "The child can be deemed self-supporting if the child has abandoned the parental home or has refused to visit or acknowledge the parents, has interrupted his education, demonstrating neither intent to re-enroll nor attendant CT Page 6092 circumstances beyond his control or if the child is receiving assistance under a federal or state program for the disabled. Marriage and entrance into military service are treated as emancipating acts. The theory is that upon marriage or entrance into mi]itary service, the child undertakes a status inconsistent with parental control and liability. Other acts in derogation of the parent-child relationship may also effect an emancipation and relieve the parent of the support obligation. For example, a child who has voluntarily left the home without parental consent is generally held to have forfeited the right to parental support." 3 Family Law and Practice, supra, § 33.10 [3], p. 33-89.
Furthermore, General Statutes § 46b-84 provides in relevant part that: "[i]n determining whether a child is in need of maintenance and, if in need, the respective abilities of the parents to provide such maintenance and the amount thereof, the court shall consider . . . the age, health, station, occupation, educational status and expectation, amount and sources of income, vocational skills, employability, estate and need of the child." See, e.g., Rempt v. Rempt, 5 Conn. App. 85, 88-89,496 A.2d 988 (1985) ("In modifying child support orders, the court may consider all of the criteria enumerated in General Statutes § 46b-84
. . . one of the most important of which is the needs of the child." (Citations omitted.)). Moreover, when a parent is incarcerated, "incarceration alone is not a change of circumstances which can justify suspension or modification of the child support obligation." Sorey v.Smith, Superior Court, Family Support Magistrate Division, judicial district of Hartford at Hartford, Docket No. 631383 (August 21, 2001,Lifshitz, FSM), quoting In Re Marriage of Thurmond, 265 Kan. 715,962 P.2d 1064 (1998). It stands to reason that if child "support is the right of the child and the duty of the parent, and if incarceration of the parent does not extinguish the duty to support, then incarceration of the child does not extinguish the right to be supported. This Court finds that in the present case, incarceration of the minor child does not fall within the definition of self-supporting, nor does it eliminate the need or the right of the child to be supported. Therefore, this Court does not have the authority to suspend the order of child support in full prior to the child reaching the age of majority under current Connecticut statutory law and case law.
There is a division on this issue among other states. The Wyoming Supreme Court agreed that "[a]s the trial court recognized, [the] Son's incarceration does not act to relieve the parents of their duty of support, a duty that arises from both statute and common law." Garver v.Garver, 981 P.2d 471, 473 (Wyo. 1999). The court went on to say that the "[f]ather relies solely on [the] Son's incarceration to support his emancipation claim, but points us to no authority indicating that incarceration, by itself, effects an emancipation. . . . Here, even if we CT Page 6093 assume that [the] Son's needs have changed, we cannot assume that [the] Son has no needs at all." Id., 474. The court suggested that it would have considered a reduction in child support, but declined to do so because a reduction was not requested. The court concluded that "because parents have a continuing duty to support their children and because child support is considered Son's money to be applied to his needs and welfare, we reject Father's contention that the support obligation should be terminated or suspended. Instead, the child support obligation remains entrusted to Mother to apply to Son's needs and welfare." Id., 474-475.
However, the Ohio Court of Appeals has ruled that a trial court did not err in suspending a father's support obligation during the period in which his teenage sons were in the custody of the state department of youth services; the court commented that the result might have been different if the mother had claimed that her fixed expenses had not changed during the boys' absence. If such a claim had been asserted, the court said an obligor might be entitled to a reduction but not a complete suspension of support. See Sigler v. Sigler, Ohio Ct. App., No. 15624, November 1, 1996.
As to the separate issue of suspension of alimony in full, it has been held that "[t]he same criteria that determine an initial award of alimony are relevant to the question of modification. and these require the court to consider, without limitation, the needs and financial resources of each of the parties, as well as such factors as health, age and station in life. General Statutes § 46b-82." (Internal quotation marks omitted.) Landman v. Landman, Superior Court, judicial district of Stamford-Norwatk at Stamford, Docket No. 70801 (October 20, 2000,Harrigan, J.). General Statutes § 46b-231 (m)(2) provides family support magistrates with the authority to hear and determine all motions for modifications of child and spousal support in IV-D support cases.
Therefore, this court has the discretion to suspend alimony in full W based on the parties' current financial situations, there has been a change in circumstances rendering the continuation of the duty to support inequitable.
 CONCLUSION
As indicated above, the Defendant's Motion to Modify is denied as to his earnings reduction claim in accordance with Connecticut General Statutes § 46b-86 (a).
Further, this Court declines to suspend, in full, current child support payments because of the minor's criminal incarceration, as it has no authority to do so under current Connecticut statutory law or case law. CT Page 6094
The Court recognizes that Mother is entrusted with the child support funds for the needs of the child, and that Mother has fixed expenses related to those needs. However, this Court also recognizes that other child-rearing expenses such as food, entertainment, school lunches, other school expenses, and other miscellaneous expenses of the custodial parent are eliminated or reduced as long as the child remains incarcerated. Therefore. this Court temporarily reduces the current child support order to $125 per week so long as the child is incarcerated (or is otherwise confined to a related program which prevents his return home), retroactive to March 26, 2002. This represents a downward deviation from the presumptive support amount based upon the equitable factors of this particular case. Income withholding is modified accordingly. The $175.00 per week order shall be reinstated immediately upon the minor returning to Plaintiff's physical custody (if prior to the minor's 18th birthday) without the need for filing a Motion for Modification.
This results in a $50 per week credit due to the Plaintiff from the Defendant from March 26, 2002. The total amount of this credit due to the Plaintiff shall be accomplished by applying credits against his weekly child support and alimony obligations in an inverse order from the date of the child's emancipation on February 18, 2003. For example, if the total credit due is $300 (i.e., 6 weeks of overpayment at $50 per week), his final two weekly payments of $150 per week (due in February 2003) will be eliminated.
Further, while the needs of the child have been reduced, the plaintiff has not offered sufficient evidence to prove that the needs of the Defendant have been reduced. Accordingly, this Court declines to modify the existing periodic alimony order of $25 per week.
Finally, this Court has no authority to direct child support payments to the State of Connecticut (to be applied toward the costs of incarceration incurred by the State). Such payments may be redirected to the State in other non-custodial situations, such as foster care cases. Perhaps our Legislature should consider extending such redirection to the State of at least a portion of child support payments in criminal incarceration matters.
JOHN E. COLELLA Family Support Magistrate